**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **PEGGY JOYCE EDWARDS as substitute party in interest for LARRY M. EDWARDS, Deceased,** )<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-05-1356-HE |
| ) | |
| **JO ANNE B. BARNHART, Commissioner, Social Security Administration,** )<br>)<br>)<br>) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her now-deceased husband's application for disability insurance benefits. Pursuant to an order entered by United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)( B). The Commissioner has answered and filed the administrative record (hereinafter Tr. ____). Both parties have briefed their respective positions and thus the matter is at issue. For the reasons stated herein, the undersigned recommends that the decision of the Commissioner be affirmed.

**I. PROCEDURAL HISTORY**

Mr. Edwards filed an application for disability insurance benefits on April 21, 2003, alleging a disability onset date of January 1, 2002. Tr. 55-57. He alleged that he was disabled due to back injury and right leg numbing. Tr. 67. The application was denied on initial consideration and on reconsideration at the administrative level. Tr.

27, 28, 29-31, 33-34. Pursuant to Mr. Edwards' request, a hearing de novo was held before an administrative law judge on November 8, 2004. Tr. 35, 188-209. Mr. Edwards appeared in person and with his attorney and offered testimony in support of his application. Tr. 190, 191-204. A vocational expert testified at the request of the administrative law judge. Tr. 39, 205-08. Mr. Edwards died on February 10, 2005. Tr. 65. The administrative law judge issued her decision on August 17, 2005, finding that Mr. Edwards was not disabled within the meaning of the Social Security Act and was not entitled to disability insurance benefits. Tr. 11-13, 14-24. The Appeals Council denied Plaintiff's request for review on October 22, 2005, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 6-8, 9.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotations and citations omitted). The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled. <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. <u>Id.</u> at 751 & n. 2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. <u>Id.</u> at 751.

### III.   THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Mr. Edwards was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 14. She found that Mr. Edwards had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 16, 23. At step two, the administrative law judge found that Mr. Edwards suffered from diabetes mellitus with neuropathy, diffuse spondylosis of the lumbar spine, post-traumatic calcification of the right ankle, a heel spur of the right foot, obesity, and a sensorineural hearing loss. Tr. 16, 23. At step three, the administrative law judge determined that these severe impairments were not severe enough to meet or equal any of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 17-18, 23. She next found that Mr. Edwards had the residual functional capacity to lift and/or carry no more than twenty pounds and no more than ten pounds on a frequent basis. She found that Mr. Edwards could stoop, crouch, kneel, and climb ramps and stairs only occasionally; he could not climb ladders, ropes or scaffolds and he was unable to work around unprotected heights or hazards. Tr. 21, 23. Based on this residual functional capacity, the administrative law judge found at Step Four

of the sequential evaluation process that Mr. Edwards was not able to perform his past relevant work. Tr. 21, 23. However, based upon Mr. Edwards' residual functional capacity and vocational factors, the administrative law judge found that there were light and sedentary jobs that Mr. Edwards could perform, such as tool crib attendant, building supply estimator, picture frame builder, material lister, and industrial order clerk. Tr. 22, 23. Thus, the administrative law judge found that Mr. Edwards was not disabled and was not entitled to benefits. Tr. 22, 23.

## IV.   ISSUES ON APPEAL

Plaintiff raises two issues on appeal, both with sub-parts, as will be set forth more fully infra. First, the Plaintiff claims that the administrative law judge's conclusion that Mr. Edwards was not credible is not supported by substantial evidence. In her second claim, Plaintiff alleges that the administrative law judge erred at step five of the sequential analysis in assessing Mr. Edwards' residual functional capacity.

## V.   DISCUSSION

### A. The Administrative Law Judge's Credibility Analysis

Plaintiff argues that the administrative law judge's credibility analysis with regard to Mr. Edwards' pain was flawed in three respects. First, she argues that the administrative law judge erred in relying on ambiguous information. Second, she argues that the administrative law judge erred in finding that the claimant was not credible because he misrepresented his work history. Finally, she argues that the administrative law judge erred in relying on the claimant's failure to follow a prescribed diet to find his credibility lacking.

4

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1. Some of the factors that may be considered in assessing a claimant's credibility as to his disabling pain include (1) his daily activities; (2) the location, duration, frequency, and intensity of his pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of any medication he receives or has received for relief of pain; (5) treatment, other than medication, the claimant has received for relief of pain; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  Social Security Ruling 96-7p, 1996 WL 374186, * 3; 20 C.F.R. § 404.1529(c)(3); Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987). In assessing a claimant's credibility, an administrative law judge must state the evidence upon which she relies. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  She is not, however, required to undertake a factor-by-factor analysis and discuss every piece of evidence in the record.  Id.  Here, the administrative law judge acknowledged the governing standard and stated that she had evaluated the evidence in compliance with that standard.  Tr. 18.  She summarized his testimony:

> The claimant testified that he was disabled due to lower extremity weakness with weight bearing instability; numbness, stiffness, and pain in the hands; numbness in the feet; low back pain which occurred on a daily basis; reduced auditory acuity with constant ringing in the ears and difficulty hearing the spoken word; muscle spasms in the legs; difficulty with accurate reading; poor concentration; and irritability.  As a side effect

> of the use of prescription pain medication, the claimant complained of drowsiness.
>
> The claimant testified that he was limited to walking one block due to leg pain and sitting a half an hour; with limitations on bending, standing and sitting. Regarding his daily activities, the claimant testified that although he did no cleaning or laundry after his alleged onset date of disability, he did no cleaning or laundry before his alleged onset date of disability either. The claimant testified that he cared for one dog, attended church, visited with relatives, saw his grandchildren weekly, read the newspaper, and listened to music. The claimant was rather vague about most of his activities.

Tr. 19. The administrative law judge proceeded to summarize the claimant's medical contacts during the relevant time period, noting that the claimant died before all of his consultative examinations could be completed. Tr. 19. The administrative law judge noted that generally the documentation did not support the level of impairment suggested by the claimant or his physicians. Tr. 19-20. The administrative law judge concluded her credibility analysis by noting:

> The claimant has alleged an incident when he stepped on a nail and was unaware of this injury. The claimant apparently received no treatment for that incident, although he later mentioned it to a doctor (Exhibit 5F). In addition, the Administrative Law Judge noted that the claimant told the initial consultative examiner in 2003 that he had not worked in six years (Exhibit 3F). At the hearing, the claimant stated that he had not worked since 1999. Despite this testimony, the claimant's record of earnings clearly reflects that the claimant worked in 2003 (Exhibit 4D). The claimant also reported work activity in 2003 to his physician (Exhibit 2F, page 1). It is apparent that the claimant worked at least until about the time that his application was filed. Finally, regarding the claimant's credibility, the claimant was not compliant with his diet (Exhibit 2F). Generally, individuals with disabling impairments follow medical advice and attempt different forms of treatment to obtain relief from some of these significant symptoms. For all such reasons, the claimant's credibility was diminished.

Tr. 20. Plaintiff contends that the credibility analysis was insufficient under the pertinent law.

### 1. Ambiguous Information

Plaintiff contends that the administrative law judge's reliance on the fact that the claimant stepped on a nail but never sought treatment was improper, because it was not clear from the record that Mr. Edwards never sought treatment. The nail incident was recounted in the record in a letter authored by Mr. Edwards' physician, Samantha Lewellen, M.D. and her physician's assistant, Sheila Coffman, PA-C, just prior to the November 8, 2004 hearing. Tr. 145. In that letter, the medical providers are relating Mr. Edwards' subjective complaints about his feet and he includes the statement about the nail to show the lack of feeling in his feet. The administrative law judge noted that this incident was one of several things Mr. Edwards only reported to his doctor shortly before the administrative hearing. Tr. 16-17. Plaintiff does not allege that there is any evidence that Mr. Edwards sought contemporaneous treatment for the nail in his foot, nor is there medical evidence to suggest that any treatment was sought. Mr. Edwards testimony about the incident does not indicate that he sought treatment for the injury. Tr. 200. He testified that he did not know that the nail was there, and indicated that it startled his doctor, but he does not indicate whether she treated the injury or if he merely relayed the story to his physician at a later date. Tr. 200. Plaintiff does not allege that there are missing medical records that would support the theory that Dr. Lewellen treated Mr. Edwards. Accordingly, it was not error for the administrative law judge to rely on the lack of medical documentation to support Mr. Edwards' statement about the nail in his foot in assessing his credibility and the fact that he only first reported this incident shortly before the hearing.

### 2. The Claimant's Work History

Plaintiff next contends that the second reason relied upon by the administrative law judge in support of her conclusion that the claimant was less than credible – the alleged misrepresentation of his work history – was inappropriate. In his application for disability benefits the claimant represented that he had become unable to work on January 1, 2002. Tr. 55. When he signed his application on April 21, 2003, Mr. Edwards alleged that he was self-employed and that he had last worked for a commercial contracting business in 1998. Tr. 57. According to the statement the claimant made on July 10, 2003, to the consultative examiner, Azhar Afaq, M.D., he had "lost work 6 years ago," which would have been 1997. Tr. 128. At the hearing before the administrative law judge the claimant testified that he last worked as a carpenter in 1999. Tr. 192. He further testified that he was trying to do some carpentry work via self employment. Tr. 193.

As noted by the administrative law judge, Mr. Edwards was somewhat vague in his testimony, which likely contributed to the administrative law judge's finding that he was not consistent regarding when he last worked. Additionally, as set forth above, the administrative law judge was not incorrect in evaluating the claimant's testimony as inconsistent. Furthermore, when assessing an administrative law judge's credibility analysis, the issue is whether the administrative law judge considered the correct factors and whether the result is supported by substantial evidence. Accordingly, the

8

administrative law judge's determination that Mr. Edwards was inconsistent about when he last worked was correct.[1]

**3. Failure to Follow A Diet**

Plaintiff claims that the administrative law judge's reliance on the claimant's failure to follow a diet as a reason for discounting his credibility was erroneous, because the administrative law judge failed to consider whether the claimant had the willpower necessary to comply, whether the claimant's pain precluded him from complying and whether psychological or emotional factors limited his ability to comply. Plaintiff's Opening Brief, p. 16. The Commissioner responds by arguing that because the failure to follow a prescribed diet was not the sole basis for denying the claimant benefits, that the detailed analysis supported by the Plaintiff was not required. Social Security Response Brief, p. 6-7.

In Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000), the claimant argued that the administrative law judged erred in his credibility determination by relying on the claimant's failure to take pain medication. He argued that the administrative law judge could not consider his failure to take pain medication in the absence of evidence that he had been prescribed pain medication and that it would have restored his ability to work if he had taken it. Id. The Court noted that the administrative law judge did not deny the claimant benefits on the ground that he failed to follow prescribed treatment. Id.

---

[1] When he filed his application Mr. Edwards alleged that he had last worked commercially in 1998, which is inconsistent with what he told Dr. Afaq. Tr. 128. At the hearing Mr. Edwards testified that he had last worked "outside" in 1999, when his earning records show that he earned $956.09 for the entire year, from an outside source. Tr. 60, 63, 192. In 2000, the first year in which all of his earnings were through self-employment, allegedly a necessity because his condition precluded him from obtaining outside employment, the claimant earned $14728.00, far greater than the amount he earned in 1999. Tr. 63.

9

Rather, the Court noted that the administrative law judge simply considered what attempts the claimant made to relieve his pain in an effort to evaluate the veracity of the claimant's contention that his pain was so severe as to be disabling. Id. The Court held that it is appropriate for an administrative law judge to consider what attempts a claimant has made to relieve his symptoms in assessing the claimant's credibility. Id. at 1373. Accordingly, the undersigned concludes that the administrative law judge did not err in considering Mr. Edwards' failure to limit his caloric intake in an effort to reduce his weight and the symptoms of his diabetes mellitus, as recommended by his treating physician. Tr. 122. Accordingly, it was not error for the administrative law judge to note and to rely upon the fact that Mr. Edwards failed to follow his physician's recommendation that he lose weight in assessing his credibility.

**B. The Administrative Law Judge's Step Five Analysis**

In her second proposition of error the Plaintiff alleges that the administrative law judge erred because she failed to quantify how the claimant's pain would have reduced his ability to work, which resulted in the failure of the Commissioner to prove at step five that the claimant could perform the jobs identified by the vocational expert. Within this argument the Plaintiff sets forth a variety of arguments in a generally confusing manner, asserting that the administrative law judge erred in assessing Mr. Edwards' pain , that the administrative law judge did not make a proper finding about Mr. Edwards' obesity, and that the administrative law judge erred in her treatment of the opinion of the treating physician. Additionally, the Plaintiff argues that the administrative law judge erred in

not accepting the question posed to the vocational expert by the claimant's attorney at the hearing.

The undersigned first addresses Plaintiff's very brief argument that the administrative law judge failed to prove that Mr. Edwards could perform the jobs identified at step five of the sequential analysis. At step five the administrative law judge is permitted to call upon a vocational expert to assist in identifying the jobs that a claimant can perform. See Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (the Commissioner should use vocational expert testimony or other similar evidence to meet his burden of showing claimant can perform jobs available in the national economy). Accordingly, the administrative law judge was entitled to rely on the testimony of the vocational expert at step five in determining whether, despite his limitations, Mr. Edwards could perform substantial gainful activity.

The true nature of Plaintiff's argument appears to be that the administrative law judge made insufficient findings with regard to Mr. Edwards' pain in assessing his residual functional capacity, and that this error resulted in an erroneous hypothetical question to the vocational expert by the administrative law judge. This argument is related to the argument raised by Plaintiff in Ground One.

As set forth above, the administrative law judge concluded that Mr. Edwards did not suffer from disabling pain. Although the administrative law judge did not find Mr. Edwards' allegations of disabling pain entirely credible, she obviously found that he suffered from some pain as a result of his impairments. As a result, the administrative law judge included certain restrictions in her residual functional capacity assessment to

account for his pain. Tr. 21. ("[C]laimant retained the residual functional capacity to lift and/or carry no more than twenty pounds and no more than ten pounds on a frequent basis, . . . could stoop, crouch, kneel, and climb ramps and stairs only occasionally; he could not climb ladders, ropes, or scaffolds. The claimant was unable to work around unprotected heights or hazards."). She further concluded that "[t]he claimant's ability to perform all or substantially all of the requirements of light work was impeded by additional exertional and/or non-exertional limitations." Tr. 22  Although Plaintiff takes issue with some of the evidence cited by the administrative law judge in support of her credibility finding, the ultimate question on review is not whether the reviewing court agrees with the administrative law judge's factual findings or whether another fact-finder might have come to a different conclusion. A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the administrative law judge. Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800 (10th Cir. 1991). The ultimate question, instead, is whether the administrative law judge's finding is supported by substantial evidence in the record as a whole, and the answer here is clearly affirmative.

Here, the administrative law judge cited to the appropriate Social Security ruling, regulations and case law in evaluating Mr. Edwards' subjective complaints. Tr. 18. She discussed his subjective complaints, including his allegations of lower extremity weakness with weight bearing instability; numbness, stiffness, and pain in the hands; numbness in the feet; daily low back pain; reduced auditory acuity, ringing in the ears and difficulty hearing the spoken word; muscle spasms in the legs; difficulty with

accurate reading; poor concentration and irritability. Tr. 19. The administrative law judge acknowledged Mr. Edwards' estimates on how long he could walk and sit and his alleged limitations on bending, standing and sitting. Tr. 19. The administrative law judge then addressed several factors that were important to her in making her credibility determination. Tr. 19-20. For example, she considered some of Mr. Edwards' activities of daily living. Tr. 19. She noted that Mr. Edwards was able to care for one dog, that he visited with his grandchildren and attended church. Tr. 19. The administrative law judge further noted that although Mr. Edwards did not do household chores, he had never done such chores, even before the onset of his alleged disability. Tr. 19.

The administrative law judge pointed out that Mr. Edwards had not sought frequent medical care for his alleged disabling conditions and that most of his doctor's reports contained only Mr. Edwards' subjective symptoms with little evaluation. Tr. 19. For example, the administrative law judge noted that although Dr. Lewellen opined that Mr. Edwards suffered from artherosclerotic vascular disease, the arterial studies were basically normal, with only mild findings. Tr. 19.

Additionally, the administrative law judge discussed Mr. Edwards' use of pain medication. Tr. 20. She noted that despite Dr. Lewellen's "characterization of the claimant's pain as severe, the claimant sought very little documented private medical treatment for any pain-producing condition between the time of his alleged date of onset of disability and his date of death." Tr. 20. Mr. Edwards did report that he took pain medication, and medical records indicate that he was on occasion prescribed such medication. Tr. 119, 200. However, the contemporaneous medical records indicate that

13

often times Mr. Edwards sought only limited treatment for a particular pain-causing condition. Only one record actually indicates the reason for prescribing pain medication during the relevant time period. In February 2003, Mr. Edwards injured his right shoulder while working. Tr. 119. The administrative law judge noted, however, that the claimant sought no further significant documented treatment related to this condition. Tr. 19. The only other evidence indicating any pain medication are reports by the claimant without any medical documentation, a "med sheet" that does not indicate why a particular drug was prescribed. Tr. 124, 128. The administrative law judge also noted that Mr. Edwards reported things to his doctor shortly before his administrative hearing that he had not previously reported. Tr. 16.

Plaintiff takes issue with the administrative law judge's comment that the claimant saw Dr. Lewellen infrequently. Although Mr. Edwards sought treatment from Dr. Lewellen over a four-year period, during that period he saw her at most six times, if the Court assumes that the medical records from 2001 were from visits to Dr. Lewellen.[2] On February 26, 2001, Mr. Edwards was treated for a bacterial infection. Tr. 122. On August 8, 2001, he sought treatment related to his diabetes mellitus. Tr. 122. On September 5, 2001, Mr. Edwards had a follow-up visit regarding his diabetes mellitus. Tr. 122. None of these entries provide significant insight into Mr. Edwards' alleged disabling condition.

---

[2] The records at Tr. 122 do not indicate the identity of the medical care provider, although going by the initials S.C., it appears that Sheila Coffman, the physician's assistant provided the care. The records indicate mostly that Mr. Edwards was seeking treatment for control of his blood sugar. At subsequent visits, Dr. Lewellen noted that his diabetes mellitus was being controlled. Tr. 119, 120.

On April 30, 2002, Dr. Lewellen saw Mr. Edwards for complaints of abdominal pain and impotence. He was diagnosed with constipation. Tr. 120, 147. On February 28, 2003, he saw Dr. Lewellen for right shoulder pain. Tr. 119. It was noted that his diabetes mellitus was well controlled and he was experiencing no numbness in his extremities. Tr. 119. These contemporaneous records are in contrast to the October 13, 2004 record, which is on letterhead and signed by both the physician and the physician's assistant, which does not indicate that Mr. Edwards was seeking treatment for any particular condition, and which is the next medical report after the February 28, 2003 report discussed above. Tr. 145. Therein the providers render opinions generally not supported by their prior records, including chronic leg, back and ankle pain, depression, poorly controlled diabetes mellitus and diabetic neuropathy. Tr. 145. The administrative law judge sufficiently explained her reasons for discounting Dr. Lewellen's opinion. Tr. 19-20.[3]

Although the administrative law judge could have discussed the evidence in greater detail, the record need only demonstrate that she considered all of the evidence; an administrative law judge is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996). Thus, the undersigned finds that the

---

[3] Plaintiff contends that Mr. Edwards testified that he could not afford medical treatment. Mr. Edwards' testimony, however, was that due to tight finances he did not have money for fishing. Tr. 202. He also testified that he could not afford an x-ray of his ankle, allegedly injured more than a decade before his alleged onset date, but never treated. Tr. 204. Mr. Edwards never indicated that he could not afford basic medical care, as evidenced by his treatment for right shoulder pain, constipation and impotence. Tr. 119, 120, 147. An x-ray of his ankle was obtained after being ordered by the administrative law judge, and it indicated "no signs of ankle instability." Tr. 149.

administrative law judge's credibility analysis is sufficient and is supported by substantial evidence.

The Plaintiff very briefly raises issues regarding the administrative law judge's treatment of Mr. Edwards' obesity and of the opinions of his treating physician.  With regard to Mr. Edwards' obesity, there is no evidence in the record that his weight created any limitations not addressed by the administrative law judge.  Accordingly, the undersigned concludes that the administrative law judge's treatment of Mr. Edwards' obesity does not provide a basis for remanding this matter.

With regard to Mr. Edwards' treating physician, the Plaintiff argues that the administrative law judge erred in discounting Dr. Lewellen's opinion.  In deciding how much weight to give the opinion of a treating physician, an administrative law judge must first determine whether the opinion is entitled to "controlling weight."  Watkins v. Barnhart, 350 F. 3d 1297, 1300 (10th Cir. 2003).  An administrative law judge must give the opinion of a treating physician controlling weight if it is both (1) "well- supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record."  Id. (internal quotation marks omitted).  Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. ( internal quotation marks omitted).  After considering the requisite factors, the administrative law judge must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2).  "Finally, if the [administrative law judge] rejects the opinion completely, he must then

16

give specific, legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (internal quotation marks omitted).

In this case, the administrative law judge did exactly that. The administrative law judge noted that the treating physician had written two letters on behalf of the claimant, both short on objective criteria and opining about Mr. Edwards' inability to work. Tr. 19, 20. The second letter, written after the claimant died, indicated that Mr. Edwards had been disabled for at least eighteen months prior to his death. In rejecting the opinions of the treating physician, the administrative law judge noted that the letters did not include objective findings and that certain statements, e.g. the diagnosis of artherosclerotic vascular disease, were contradicted by medical tests performed by other medical professionals. Tr. 19. She also noted that although Dr. Lewellen believed Mr. Edwards to be deaf, that despite his hearing loss, he scored 92% in the speech discrimination test. Tr. 20. The administrative law judge also noted that the claimant sought very little treatment for his pain-producing conditions, and that although the doctor characterized Mr. Edwards' diabetes mellitus as poorly controlled, the infrequency with which he sought treatment for his diabetes mellitus precluded such a determination. Tr. 20. Although Plaintiff takes issue with the administrative law judge's conclusions, Plaintiff's arguments are not well taken.

Plaintiff complains that the administrative law judge did not accept the opinions of the treating physician and the consultative examiner with regard to his residual functional capacity. The administrative law judge specifically noted the she was accepting the lifting and carrying limitations imposed by the treating physician and the

consultative examiner, as well as the non-examining agency physicians. Tr. 21. Plaintiff does not point to any specific inconsistencies between the administrative law judge's residual functional capacity assessment and the limitations imposed by the doctors. However, even assuming that the administrative law judge erred in not accepting the treating physician's limitations of no kneeling, limited squatting, no crawling and no bending, Tr. 145, 185, the sedentary jobs identified by the vocational expert do not require any of these activities. See Dictionary of Occupational Titles, 221.367-022 industrial order clerk (no climbing, stooping, kneeling, crouching, crawling); 229.387-010, material lister (no climbing, stooping, kneeling, crouching, crawling), United States Dep't of Labor (1991). The vocational expert testified that there are 64,000 industrial order clerk positions in the national economy, 1,100 of those in Oklahoma, and 136,000 material lister positions nationwide, with 418 in Oklahoma. Tr. 206. These jobs exist in significant number in the national economy. See Trimiar v. Sullivan, 966 F.2d 1326, 1330, 1332 (10th Cir. 1992) (holding that 650 to 900 jobs in Oklahoma is a significant number of jobs); Prince v. Apfel, No. 97-5176, 1998 WL 317525 at *3 (10th Cir. June 11, 1998) (350 jobs in Oklahoma and 50,000 nationwide as a gate tender and 50 jobs in Oklahoma and 20,000 nationwide as a night watchman constituted significant number of jobs).[4] Accordingly, any error by the administrative law judge in this regard was harmless.

The Plaintiff also argues that the administrative law judge should have considered the hypothetical posed by the claimant's attorney to the vocational expert. This argument

---

[4] This and any other unpublished decision cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

appears related to Plaintiff's first argument regarding the administrative law judge's credibility analysis, because Plaintiff complains that the vocational expert was not asked any questions that included a diminished capacity to work as a result of pain. Specifically, Plaintiff relies upon the vocational expert's testimony that if Mr. Edwards was required to "have frequent breaks, frequent position change, and a decreased ability to concentrate" such that it reduced his ability to concentrate by thirty percent, that it would preclude all of the identified jobs and any other competitive employment. Tr. 207.

Hypothetical questions to the vocational expert "need only reflect impairments and limitations that are borne out by the evidentiary record." Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Thus, when the administrative law judge's hypothetical accurately reflects the administrative law judge's assessment of a claimant's impairments and limitations, and that assessment is supported by substantial evidence in the record, then the step five decision is also supported by substantial evidence. Skaggs v. Apfel, No. 98-7188, 1999 WL 694281 at *4 (10th Cir. Sept. 8, 1999). Because the hypothetical questions posed by the administrative law judge were consistent with the limitations she imposed, this alleged error does not warrant remand

## VI. RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of the Social Security Administration be affirmed. The parties are advised of their right to file an objection to the Report and Recommendation

with the Clerk of this Court by June 20, 2006, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1. This Report and Recommendation disposes of all of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 31st day of May, 2006.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE